VANDENBERG & FELIU, LLP
Attorneys for Plaintiff
110 East 42nd Street, Suite 1502
New York, New York 10017
(212) 763-6800

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
GERD THIELEBEULE,                                    ECF CASE

                 Plaintiffs,            Case No. 04 CV 8460(RJH)(THK)

       -against-                                         **COMPLAINT**

GERMANISCHER LLOYD (U.S.A.), INC. and      **JURY TRIAL DEMANDED**
GERMANISCHER LLOYD, AG,

                 Defendants.
----------------------------------------------------------------X

       Plaintiff Gerd Thielebeule by his attorneys, Vandenberg & Feliu, LLP, as and for his Complaint, alleges as follows:

### Jurisdiction and Venue

       1.    Jurisdiction is conferred by 28 U.S.C. § 1332(a)(3) which provides for original jurisdiction in the District courts over actions where the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different States and in which citizens or subjects of a foreign state are additional parties.

       2.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(3) in that no basis for venue exists under 28 U.S.C. §§ 1391(b)(1) or 1391(b)(2) and one of the defendants is subject to personal jurisdiction in this judicial district.

### Parties

       3.    Plaintiff GERD THIELEBEULE ("Thielebeule") is an individual who

resides at 3110 Park Newport, Apartment 401, Newport Beach, California 92660.

4. Defendant GERMANISCHER LLOYD, AG ("GLAG") is a German corporation having its principal place of business at Vorsetzen 35, 20459 Hamburg, Germany.

5. GLAG is a provider of maritime and non-maritime technical inspection and certification services with clients worldwide.

6. Defendant GERMANISCHER LLOYD (U.S.A.), INC. ("GL-USA") is a New York corporation, having its principal place of business at 303 South Broadway, Suite 460, Tarrytown, New York 10591, in the County of Westchester, in the State of New York.

7. GL-USA is a subsidiary of GLAG and is the North American representative of GLAG.

**Employment Relationship**

8. Thielebeule worked for GLAG beginning in 1982.

9. Thielebeule was employed by GL-USA in 1992 as a ship surveyor in Los Angeles. He continued to be employed by GL-USA as a surveyor through September 30, 2003.

10. Thielebeule entered into an employment agreement with GL-USA dated July 1, 1992 (the "Employment Agreement").

11. The Employment Agreement provided, *inter alia*, that:

   A. Thielebeule's annual salary was US $62,000.

   B. Thielebeule would work 40 hours per week.

   C. Thielebeule would receive an additional US $3,500.00 housing allowance annually.

   D. Thielebeule was entitled to twenty (20) working days of vacation

2

      per year.

   E. Thielebeule would be entitled, after working for GL-USA for twenty years, to a one-time lump sum payment for "Retirement Compensation" in an amount equal to 15/12ths of his gross salary in the final year of his employment.

12. The Employment Agreement was extended several times between 1993 and 2003 and the terms of the Employment Agreement were modified on several occasions as follows:

   A. On March 4, 1993, Thielebeule's salary was increased to US $66,700 per annum.

   B. On March 10, 1994, Thielebeule's salary was increased to US $69,000 per annum.

   C. On June 20, 1995, Thielebeule was re-assigned to work in Bangkok and was provided with a $1650 per month stipend to cover energy costs and airfare between his overseas assignment and his residence in the United States.

   D. On March 20, 1996, Thielebeule's salary was increased to US $74,000 per annum.

   E. On March 8, 2001, Thielebeule's salary was increased to US $82,800 per annum, and he and GL-USA agreed that upon his termination for any reason, GL-USA would pay Thielebeule, as "Retirement Compensation," 15/12 of his gross salary paid in the

3

final year of his employment.

  F. On April 20, 2001, Thielebeule was temporarily transferred to Tunisia, and he and GL-USA agreed that (1) Thielebeule was to receive an additional amount of US $1,531.00 per month as "global compensation for country extra costs," (2) Thielebeule was to receive a trip home once every six months to be paid for by GL-USA; and (3) Thielebeule's accommodations were to be paid for by GL-USA.

  G. On May 27, 2002, Thielebeule's salary was increased to US $85,360.00 per annum effective from March 1, 2002.

13. Pursuant to a written Memorandum of Agreement between GL-USA and GLAG, effective January 1, 1996, Thielebeule became a "borrowed servant" of GLAG ("Borrowed Servant Agreement").

14. On February 2, 2001, Thielebeule received notice from GL-USA and GLAG that his assignment as a borrowed servant for GLAG would terminate on March 31, 2001 and that his Employment Agreement, as amended, would terminate on April 1, 2001.

15. In or about March 2001, GL-USA and GLAG reversed their decision to terminate the Employment Agreement, as amended, and the Borrowed Servant Agreement (together the "Contracts").

16. Pursuant to a March 8, 2001 letter agreement between Thielebeule and GL-USA, the Contracts were continued through April 30, 2002.

17. On April 20, 2001, Thielebeule was temporarily transferred to Tunisia, to

conduct business for GLAG and GL-USA in Tunisia, Libya, and Algeria.

18.     By letter dated March 17, 2003, GL-USA gave Thielebeule notice of termination of the Contracts, effective April 30, 2003, but in or around April 2003, GL-USA requested and Thielebeule agreed to extend the Contracts for two months through June 30, 2003.

19.     By letter agreement dated July 2, 2003, GL-USA confirmed a second two-month extension of the Contracts through August 31, 2003.

20.     By letter agreement dated September 3, 2003, GL-USA confirmed a third extension of the Contracts for one additional month through September 30, 2003.

21.     On September 30, 2003, the Contracts terminated and Thielebeule's employment by GL-USA and GLAG terminated.

22.     Between September 30, 2003 and February 2004, and at various times since then, Thielebeule has continued to windup the business affairs of GLAG in Algeria. Thielebeule was not paid for this work by either GLAG or GL-USA.

### FIRST CAUSE OF ACTION
### Breach of Contract

23.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 22 as if fully set forth herein.

24.     Thielebeule has fully performed all of his obligations under the Contracts.

25.     Defendants have breached their obligations under the Contracts by failing to pay to Thielebeule compensation due under the Contracts.

26.     Thielebeule has suffered damages in an amount to be finally determined at trial, but not less than US $449,514.00 as follows.

Retirement Compensation

27. Thielebeule's total gross salary in the 12 months preceding the termination of his employment on September 30, 2003 was $114,185.74.

28. Pursuant to paragraph 3 of the March 8, 2001 Letter Agreement and paragraph 8 of the July 1, 1992 Employment Agreement, Thielebeule is entitled to be paid an amount equal to 15/12ths of his final year's gross salary as "Retirement Compensation."

29. Thielebeule is due "Retirement Compensation" in the amount of US $142,732.00.

30. GL-USA has not paid this amount to Thielebeule.

Accrued Unpaid Vacation Days

31. Pursuant to paragraph 7 of the Employment Agreement, Thielebeule was entitled to 20 days of vacation per year.

32. Under GLAG and GL-USA's company practices, this number of vacation days was increased to 26 days per year for employees working in the tropics.

33. Between May 8, 1999 and September 30, 2003, Thielebeule accumulated 45.5 vacation days for which he is entitled to compensation.

34. Thielebeule is due compensation for these unused vacation days in the amount of US $17,516.00.

35. GL-USA has not paid this amount to Thielebeule.

Accrued Unpaid Saturdays

36. Pursuant to paragraph 3 of the Employment Agreement, Thielebeule was required to work 40 hours per week.

37. Between 2001 and September 30, 2003, Thielebeule worked 117 Saturdays — 26 in 2002, 52 in 2002, and 39 in 2003 — for which he is entitled to compensation.

38. Thielebeule is due compensation for these unpaid Saturday work days plus overtime at the Federally required rate in the total amount of US $67,560.00.

39. GL-USA has not paid this amount to Thielebeule.

Unpaid Travel Expenses

40. Pursuant to the April 20, 2001 letter agreement between Thielebeule and GL-USA, Thielebeule was entitled to travel home to the United States once every six months while he was working for GL-USA in Algeria.

41. Thielebeule did, in fact, make a trip home every six months between April 2001 and September 2003, for a total of six such trips.

42. GL-USA did not pay for these trips.

43. Upon information and belief, the cost of an airplane ticket from Algeria to Los Angeles is US $5,653.00.

44. Thielebeule is due reimbursement for these trips in the amount of US $33,918.

45. GL-USA has not paid this amount to Thielebeule.

Housing Allowance

46. Pursuant to the Employment Agreement, the March 4, 1993 letter from GL-USA, and the March 10, 1994 letter from GL-USA, Thielebeule was entitled to an allowance of US $3,500 per year.

47. GL-USA has not paid these amounts to Thielebeule.

48. Thielebeule is due US $31,500.00 from GL-USA for this unpaid allowance.

Extra Overseas Allowance

49. Pursuant to the June 20, 1995 letter from GLAG and the March 20, 1996 letter from GL-USA, Thielebeule's was entitled to an "extra allowance" of US $1,650 per month for working overseas.

50. GL-USA has not paid these amounts to Thielebeule.

51. Thielebeule is due US $103,950.00 from GL-USA for this unpaid allowance.

Overtime and Late-Hour Fees

52. Pursuant to the July 1, 1992 employment agreement, Thielebeule would be paid his compensation as the basis of a 40-hour work week.

53. Under the policy of GL-USA and GLAG, "late hour surveys" comprised survey work performed after 5:00 PM and before 8:00 AM or on Saturday or Sunday.

54. From 2001 through 2003, Thielebeule worked a total of 1,586 overtime or late-hour survey hours.

55. These hours were documented to GL-USA and GLAG through Thielebeule's activity reports.

56. GL-USA has not paid Thielebeule for these overtime or late-hour survey hours.

57. Prior to 2001, GL-USA paid Thielebeule US $33.00 per hour for overtime or late-hour survey hours.

8

58.    Thielebeule is due $52,338.00 for these overtime hours.

## SECOND CAUSE OF ACTION
### Violation of New York Labor Law

59.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 58 as if fully set forth herein.

60.    Thielebeule is an "employee" within the meaning of the New York Labor Law.

61.    GL-USA and GLAG are "employers" with the meaning of the New York Labor Law.

62.    Defendants GL-USA and GLAG agreed to pay Thielebeule all amounts due to him under the Employment Agreement.

63.    Thielebeule is owed "wages" as that term is defined in the New York Labor Law.

64.    Defendants' failure to pay Thielebeule all amounts due under the Employment Agreement constitutes a violation of Article 6 of the Labor Law of the State of New York.

65.    Specifically, Defendants' conduct is a violation of § 191(1)(d), which requires that wages earned in accordance with the agreed terms of employment must be paid not less than semi-monthly.

66.    Defendants' conduct is also a violation of § 191(3), which requires that after an employee is terminated, the employer must pay the wages not later than the regular pay

day for the period during which the termination occurred.

67.     Defendants owe Plaintiff an amount to be finally determined at trial, but not less than US $449,514.00 in unpaid wages, allowances and overtime in accordance with the provisions of Article 6 of the Labor Law of the State of New York.

68.     Pursuant to New York Labor Law § 198(1), Thielebeule is entitled to costs and, in addition to ordinary costs, a reasonable sum, not exceeding fifty dollars for expenses which may be taxed as costs.

69.     Pursuant to New York Labor Law § 198(1-a), Thielebeule is entitled to be reimbursed by Defendants for his reasonable attorneys' fees.

70.     Defendants' failure to pay Thielebeule all amounts due under the Employment Agreement, and as required by the New York Labor Law, was willful.

71.     Pursuant to New York Labor Law § 198(1-a), Thielebeule is entitled to an additional amount of liquidated damages equal to twenty-five percent of the total amount of the wages found to be due — an amount to be finally determined at trial, but not less than US $112,378.50.

### THIRD CAUSE OF ACTION
### Violation of California Labor Code

72.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 71 as if fully set forth herein.

73.     Thielebeule is an "employee" within the meaning of the California Labor Code.

74.     GL-USA and GLAG are "employers" with the meaning of the California

Labor Code.

75. Defendants GL-USA and GLAG agreed to pay Thielebeule all amounts due to him under the Employment Agreement.

76. Defendants GL-USA and GLAG agreed to pay Thielebeule all amounts due to him under the Employment Agreement.

77. Thielebeule is owed "wages" as that term is defined in the California Labor Code.

78. Defendants' failure to pay Thielebeule all amounts due under the Employment Agreement constitutes a violation of the California Labor Code, specifically, § 200 *et seq*.

79. Defendants owe Plaintiff an amount to be finally determined at trial, but not less than US $449,514.00 in unpaid wages, allowances and overtime in accordance with the provisions of the California Labor Code.

80. Defendants failed to pay this amount immediately following Thielebeule's termination as required by California Labor Code § 201(a).

81. Pursuant to California Labor Code § 203, Thielebeule is entitled to receive additional wages for 30 days from the date of his termination.

82. Pursuant to California Labor Code § 218.5, Thielebeule is entitled to be reimbursed by Defendants for his reasonable attorneys' fees.

WHEREFORE, Plaintiff Gerd Thielebeule respectfully demands entry of judgment:

A. On his First Cause of Action, in an amount to be finally determined at trial, but not less than US $449,514.00, plus interest thereon;

B. On his Second Cause of Action, in an amount to be finally determined at trial, but not less than US $449,514.00, plus interest thereon, plus costs, attorneys' fees and additional liquidated damages in an amount to be finally determined at trial, but not less than US $112,378.50.

C. On his Third Cause of Action, in an amount to be finally determined at trial, but not less than US $449,514.00, plus interest thereon at the rate of 10% per annum pursuant to California Labor Code § 218.5 and California Civil Code § 3289, an additional 30 days of wages, and attorneys' fees; and

D. Such other and further relief as to the Court shall seem just and proper.

Dated: New York, New York
October 27, 2004

VANDENBERG & FELIU, LLP

By: _____
Raymond L. Vandenberg (RV-3661)
Attorneys for Plaintiff
110 East 42nd Street, Suite 1502
New York, New York 10017
(212) 763-6800